## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CRONOS TECHNOLOGIES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 13-1538-LPS |
| | ) | |
| EXPEDIA, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| CRONOS TECHNOLOGIES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 13-1541-LPS |
| | ) | |
| PRICELINE.COM, INCORPORATED (n/k/a THE PRICELINE GROUP INC.) and PRICELINE.COM LLC, | ) ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| CRONOS TECHNOLOGIES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 13-1544-LPS |
| | ) | |
| TRAVELOCITY.COM L.P., | ) | |
| | ) | |
| Defendant. | ) | |

Richard D. Kirk, Stephen B. Brauerman, BAYARD, P.A., Wilmington, DE

Brian D. Ledahl, Paul A. Kroeger, Adam S. Hoffman, RUSS, AUGUST & KABAT, Los Angeles, CA

Attorneys for Plaintiff Cronos Technologies, LLC.

Jack B. Blumenfeld, Michael J. Flynn, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE

John M. Jackson, Nathaniel (Nate) St. Clair II, Matthew C. Acosta, JACKSON WALKER L.L.P., Dallas, TX
David Folsom, JACKSON WALKER L.L.P., Texarkana, TX

      Attorneys for Defendants Expedia, Inc., Priceline.com, Inc., Priceline.com LLC, and Travelocity.com L.P.

## MEMORANDUM OPINION

July 22, 2016
Wilmington, Delaware

STARK, U.S. District Judge:

Pending before the Court is a motion for summary judgment of non-infringement (D.I. 170) ("Motion") filed by Defendants Expedia, Inc., priceline.com, Incorporated (n/k/a The Priceline Group, Inc.), priceline.com, LLC, and TVL LP (f/k/a Travelocity.com LP) ("Defendants").

I.      BACKGROUND

Cronos Technologies, LLC ("Plaintiff") sued Defendants for infringement of U.S. Patent No. 5,664,110 ("'110 patent") in September 2013. (*See, e.g.*, C.A. No. 13-1538 D.I. 1)[1] The '110 patent is entitled "Remote Ordering System" and generally relates to a system for creating and updating "order lists" by communicating with "merchant stock databases." ('110 patent at 1)[2] Plaintiff argues that claims 1, 3, 8, 10, 14, 16, 17, 22, 26, 30, 31, 41, and 42 of the '110 patent ("Asserted Claims") are infringed by Defendants' travel booking websites. (D.I. 179 Ex. 11 at 1) Claims 1 and 22 are independent. Claims 1, 3, 8, 10, 14, 16, and 17 are apparatus claims ("Apparatus Claims"). Claims 22, 26, 30, 31, 41, and 42 are method claims ("Method Claims").

The Court held a *Markman* hearing on April 13, 2015 and issued a Memorandum Opinion on claim construction on June 8, 2015. (D.I. 82, 86)

On March 15, 2016, Defendants moved for summary judgment that their websites do not infringe any of the Asserted Claims. (D.I. 170) The parties completed briefing on Defendants' Motion on April 22, 2016. (D.I. 172, 198, 212) The Court held a hearing on the Motion, and

---

[1] All docket citations are to C.A. No. 13-1538, unless otherwise noted.

[2] The '110 patent is in the record at D.I. 1 Ex. A.

other summary judgment and *Daubert* motions filed by the parties,[3] on May 24, 2016.  (*See*

Transcript, D.I. 235 ("Tr."))

After the May 24 hearing, the Court ordered the parties to submit additional briefing

regarding (1) the parties' proposed constructions for the terms "item code" and "identifying

code" as used in claims 1 and 22 respectively, and (2) the parties' views regarding the phrases

"data entry device for providing said terminal with said . . . item codes" and "user inputting said

identifying code" in claims 1 and 22 respectively.  (D.I. 229)  The parties completed briefing on

these issues on June 10, 2016.  (D.I. 230, 232, 233, 234)

## II.    LEGAL STANDARDS

### A.    Claim Construction

The ultimate question of the proper construction of a patent is a question of law.  *See*

*Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 837 (2015) (citing *Markman v. Westview*

*Instruments, Inc.*, 517 U.S. 370, 388-91 (1996)).  "It is a bedrock principle of patent law that the

claims of a patent define the invention to which the patentee is entitled the right to exclude."

*Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (internal quotation marks omitted).

"[T]here is no magic formula or catechism for conducting claim construction."  *Id.* at 1324.

Instead, the court is free to attach the appropriate weight to appropriate sources "in light of the

statutes and policies that inform patent law."  *Id.*

"[T]he words of a claim are generally given their ordinary and customary meaning . . .

---

[3]The Court is not at this time addressing any of the other motions that are pending and were the subject of the May hearing.  Nor has the Court addressed each of Defendants' non-infringement arguments.  The Court will confer with the parties before proceeding to resolve the other disputes the parties have put before the Court.

[which is] the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Id.* at 1312-13 (internal citations and quotation marks omitted). "[T]he ordinary meaning of a claim term is its meaning to the ordinary artisan after reading the entire patent." *Id.* at 1321 (internal quotation marks omitted). The patent specification "is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).

While "the claims themselves provide substantial guidance as to the meaning of particular claim terms," the context of the surrounding words of the claim also must be considered. *Phillips*, 415 F.3d at 1314. Furthermore, "[o]ther claims of the patent in question, both asserted and unasserted, can also be valuable sources of enlightenment . . . [b]ecause claim terms are normally used consistently throughout the patent . . . ." *Id.* (internal citation omitted).

It is likewise true that "[d]ifferences among claims can also be a useful guide . . . . For example, the presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim." *Id.* at 1314-15 (internal citation omitted). This "presumption is especially strong when the limitation in dispute is the only meaningful difference between an independent and dependent claim, and one party is urging that the limitation in the dependent claim should be read into the independent claim." *SunRace Roots Enter. Co., Ltd. v. SRAM Corp.*, 336 F.3d 1298, 1303 (Fed. Cir. 2003).

It is also possible that "the specification may reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess. In such cases, the inventor's lexicography governs." *Phillips*, 415 F.3d at 1316. It bears emphasis that "[e]ven

when the specification describes only a single embodiment, the claims of the patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using words or expressions of manifest exclusion or restriction." *Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1372 (Fed. Cir. 2014) (internal quotation marks omitted).

In addition to the specification, a court "should also consider the patent's prosecution history, if it is in evidence." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 980 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996). The prosecution history, which is "intrinsic evidence," "consists of the complete record of the proceedings before the PTO [Patent and Trademark Office] and includes the prior art cited during the examination of the patent." *Phillips*, 415 F.3d at 1317. "[T]he prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Id.*

In some cases, "the district court will need to look beyond the patent's intrinsic evidence and to consult extrinsic evidence in order to understand, for example, the background science or the meaning of a term in the relevant art during the relevant time period." *Teva*, 135 S. Ct. at 841. Extrinsic evidence "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Markman*, 52 F.3d at 980. For instance, technical dictionaries can assist the court in determining the meaning of a term to those of skill in the relevant art because such dictionaries "endeavor to collect the accepted meanings of terms used in various fields of science and technology." *Phillips*, 415 F.3d at 1318. In addition, expert testimony can be useful "to ensure that the court's understanding of

4

the technical aspects of the patent is consistent with that of a person of skill in the art, or to establish that a particular term in the patent or the prior art has a particular meaning in the pertinent field." *Id.* Nonetheless, courts must not lose sight of the fact that "expert reports and testimony [are] generated at the time of and for the purpose of litigation and thus can suffer from bias that is not present in intrinsic evidence." *Id.* Overall, while extrinsic evidence "may be useful" to the court, it is "less reliable" than intrinsic evidence, and its consideration "is unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence." *Id.* at 1318-19. Where the intrinsic record unambiguously describes the scope of the patented invention, reliance on any extrinsic evidence is improper. *See Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1308 (Fed. Cir. 1999) (citing *Vitronics*, 90 F.3d at 1583).

Finally, "[t]he construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998). It follows that "a claim interpretation that would exclude the inventor's device is rarely the correct interpretation." *Osram GmbH v. Int'l Trade Comm'n*, 505 F.3d 1351, 1358 (Fed. Cir. 2007) (internal quotation marks omitted).

### B.    Summary Judgment

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co.,*

*Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).  An assertion that a fact cannot be – or, alternatively, is – genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B).  If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted).  The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted).  The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50

(internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). Thus, the "mere existence of a scintilla of evidence" in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment; there must be "evidence on which the jury could reasonably find" for the nonmoving party. *Anderson*, 477 U.S. at 252.

## III.   DISCUSSION

### A.   Claim Construction

The Court ordered the parties to propose constructions for the terms "item code" and "identifying code" as these terms are used in claims 1 and 22, respectively. (D.I. 229 at 2)  The parties agree that these terms should be construed to have the same meaning as one another, although the parties disagree about what that meaning should be. (D.I. 230 at 1; D.I. 232 at 3)  The Court also permitted the parties to submit proposed constructions for the phrases "data entry device for providing said terminal with said . . . item codes"[4] and "user inputting said identifying code" in claims 1 and 22, respectively. (D.I. 229 at 2-3)

Claim 1 recites:

> A remote ordering terminal for providing at least one list of
> at least one item or group of items to a remotely located order
> processing system associated with one or more merchants on each
> of a plurality of occasions, each item or group of items having an
> item code associated therewith, said remote ordering terminal
> comprising:

---

[4]The term "data entry device" was previously construed by the Court as a "device that provides coded information to the remote ordering terminal." (D.I. 86 at 8-10)

user and/or merchant identifier means;

at least one data entry device for providing said terminal with said item associated item codes and with data from said user and/or merchant identifier means;

a database unit providing a user-specific database including user-discernable item data associated with item codes for user-selected items or groups of items;

memory to provide storage for said user-specific database, said memory in communication with said at least one data entry device for storing said at least one list;

communication means for associating said memory and said order processing system upon user command for remotely accessing said order processing system over a multi-user network, for transmitting said at least one list to said order processing system using said data from said user and/or merchant identifier means, and for receiving new and/or replacement user-discernable item data from said order processing system during association of said memory and said order processing system, said new and/or replacement user-discernable item data corresponding only to said at least one item or group of items of said at least one list;

a message display portion in communication with said memory and said user-specific database for displaying order pertinent information including said user-discernable item data from said memory; and

at least one command entry device responsive to user selection of items from said order pertinent information for assembling said at least one list and for enabling said user command, resulting in said transmitting of said at least one list to said order processing system,

wherein said at least one list is comprised of an order to be processed by said order processing system, or a provisional order list transmitted to said order processing system, transmission of either resulting in on-demand receipt of said new and/or replacement user-discernable item data within said user-specific database for said at least one item or group of items.

8

Claim 22 recites as follows:

A method for remote ordering at least one desired item by a user from one of a plurality of merchants using a system having a user device, a central computer, one of a plurality of merchant databases, and a communications link including a multi-user network, said at least one desired item having a unique identifying code associated therewith, the method comprising:

storing for a plurality of user-specific items, in an identifier database accessible at said user device for user perception at said user device, a user-cognizable identifier of said at least one item corresponding to said identifying code;

user inputting said identifying code corresponding to said at least one desired item into said user device by machine recognition of said user input identifying code;

accumulating from said identifier database selected ones of said user-cognizable identifiers corresponding to said input identifying codes in at least one list of desired items;

selectively associating a transaction identifier having user and/or merchant identifications with said user device to identify a selected merchant database and/or to identify said user to a selected merchant database;

commanding said user device to establish remote communication between said user device and said selected merchant database corresponding to said merchant identification through said central computer over said communications link including said multi-user network;

interactively updating only said selected one of said user-cognizable identifiers in said identifier database of user-specific items with current information provided by said merchant database over said communications link in response to a user action at said user device, said user action including

the communication of a provisional list of desired items transmitted to said selected merchant database for the purpose of providing said interactive updating, or

9

the communication of an order list of desired items transmitted to said selected merchant database for the purpose of providing said interactive updating and remote ordering[,] said desired items comprising said order list; and

passing transaction specific information over said communications link including said identifying codes between said user device and said selected merchant database.

### 1.    "item code" / "identifying code"

| |
| --- |
| **Plaintiff**<br>"information used to designate a purchasable product" |
| **Defendants**<br>"a code corresponding to a unique purchasable product, or group of products, that is distinct from the user-discernable representation of the product or group of products"[5] |
| **Court**<br>"a code corresponding to a purchasable product, or group of products, that is distinct from the user-discernable representation of the product or group of products" |

Plaintiff argues that these terms should be given a broad construction because "[t]he specification does not require the item code to have any specific form." (D.I. 232 at 3) As support for this argument, Plaintiff contends that "[t]he specification describes various ways to communicate product designations to the system, including by scanning a bar code and by touching a box next to an item on a list." (*Id.*) (citing '110 patent at 3:22-26, 7:27-30, 10:7-17) Plaintiff argues that Defendants' construction is "circular" because it includes the word "code" without proposing an "actual meaning" for this word. (*Id.* at 4) Plaintiff further contends that Defendants' construction improperly imports limitations from the specification by requiring an

---

[5]Defendants originally proposed a construction that included the words "item" and "items" in place of the words "product" and "products," respectively. (D.I. 230 at 1) Defendants later argued that replacing the word "item" with "product" would result in the same or similar construction. (*See* D.I. 234 at 2 n.2) The word "product" refines the meaning of the word "item," which already appears in the term "item code." Therefore, the Court will include the word "product" instead of "item" in its construction.

item code to (1) correspond to a "unique" purchasable product and (2) be "distinct" from user-discernable representations of the product. (*Id.*)

Defendants argue that their "unique" and "distinct" limitations are supported by the intrinsic record. (D.I. 230 at 1-2) Defendants also contend that the "unique" limitation is supported by extrinsic evidence – specifically, a dictionary definition for "Universal Product Code (UPC)," which is identified in the specification as an example of an "item code." (*Id.* at 1 n.3) According to Defendants, Plaintiff's example of "touching a box next to an item on a list," which is in the specification, does not qualify as communicating an item code to "the system" because this example originates from "portions of the specification that have nothing to do with inputting 'item codes.'" (D.I. 234 at 1-2) As support for this latter point, Defendants argue that a user's interaction with user-discernible representations of products is clearly distinguished "throughout the patent" from a user's inputting of item codes. (*Id.*) Defendants further contend that "Plaintiff's proposed construction improperly attempts to remove the 'item code input and translation' feature of the invention, which is specifically and separately required by the asserted claims, by conflating it with the 'selection and manipulation of user-discernable representations' feature." (D.I. 234 at 1)

The Court agrees with Defendants that Plaintiff's proposed construction is improperly broad. Plaintiff's construction is based on a flawed reading of the claim language in light of the specification. Plaintiff suggests that item codes may be entered when a user "touch[es] a box next to an item on a list" being displayed to the user. (D.I. 232 at 3) (citing '110 patent at 10:7-17) Plaintiff's cited portion of the specification, which describes an embodiment depicted in Figure 4, does not relate to the input of item codes as claimed in the Asserted Claims. The

11

claim language makes clear that item codes must be provided to the "remote ordering terminal"
by a "data *entry* device" in claim 1 ('110 patent at 14:53-54) (emphasis added) and must be
*inputted* by a "user" into a "user device" in claim 22 (*id.* at 16:35-38). These claim limitations
do not cover a user's *selection* of item codes *that have already been inputted* into the "remote
ordering terminal" or "user device." Because the cited portions of the specification related to
Figure 4 do not relate to input of item codes, and because the claim language requires initial
input of item codes by a user, Plaintiff's broad construction must be rejected.

The Court generally agrees with Defendants' proposed construction, with the exception of
Defendants' inclusion of the "unique" limitation. Claim 22 explicitly requires that the
"identifying code" be "unique," so inclusion of the "unique" limitation in the term "identifying
code" would render the express limitation in claim 22 superfluous. The Court generally avoids
constructions that render a claim limitation superfluous. *See TQ Beta LLC v. Dish Network
Corp.*, 2016 WL 356024, at *5 (D. Del. Jan. 28, 2016) (citing *Merck & Co. v. Teva Pharms.
USA, Inc.*, 395 F.3d 1364, 1372 (Fed. Cir. 2005)). Although claim 1 does not include an explicit
"unique" limitation like claim 22, the parties agree that "item code" and "identifying code"
should be construed to have the same meaning as one another. "[C]laim differentiation takes on
relevance in the context of a claim construction that would render additional, or different,
language in another independent claim superfluous." *Curtiss-Wright Flow Control Corp. v.
Velan, Inc.*, 438 F.3d 1374, 1381 (Fed. Cir. 2006). Hence, the Court declines to include the
"unique" limitation in the Court's construction.

Although Plaintiff is correct that Defendants' definition is somewhat "circular" because it
includes the word "code," the specification of the '110 patent indicates that "code" has a plain

12

and ordinary meaning to those of ordinary skill in the art. (*See* '110 patent at 3:14-17) ("The specific bar code employed can be Code 128, Codabar, or one of the UPC (UPC-A, UPC-E) or EAN (EAN-8, EAN-13) codes, *or any other code* including system specific code.") (emphasis added) The Court could include these examples from the specification in the Court's construction to further clarify the meaning of "code." However, including the examples is unnecessary in light of the Court's inclusion of Defendants' "distinct" limitation, discussed below.[6] Thus, it is appropriate to give the word "code" in "item code" its plain and ordinary meaning to one of skill in the art.

Finally, and importantly for purposes of deciding Defendants' Motion, the Court determines that these terms must be construed to be "distinct from the user-discernable representation of the product or group of products" associated with an item code. The claim language indicates that item codes are distinct from user-discernable information about a product. Claim 1 specifies that item codes are "associated with" user-discernable product information. ('110 patent at 14:56-58) Claim 22 includes the same distinction, specifying that item codes are input into the "user device by machine recognition of said user input identifying code" and that "user-cognizable identifiers correspond[] to" the identifying code.

The specification also instructs that item codes are to be distinguished from user-discernable information associated with item codes. For example, with respect to claim 22, the specification instructs that machine translations of item codes are "distinct from the user-discernable representation of the scanned product . . . *the latter being in no way directly derivable from the [item] code.*" (*See* '110 patent at 8:17-25) (emphasis added) Regarding

---

[6]In addition, inclusion of these highly technical examples would not be helpful to a jury.

claim 1, numerical representations of item codes received from data entry devices such as bar code scanners do not have independent meaning to users, according to the specification. (*See id.* at 7:27-30; 12:39-49) In light of the plain and ordinary meaning of the claim language, as read in light of the specification, the Court agrees with Defendants that item codes are distinct from user-discernable product information.[7]

> 2. **"data entry device for providing said terminal with said . . . item codes"**

| |
|---|
| **Plaintiff**<br>"device that provides coded information to the remote ordering terminal for providing an item code to the remote ordering terminal either by: (1) initial presentation by the user; or (2) selection by the user of a product or service from a list of purchasable products or services displayed by the remote ordering terminal" |
| **Defendants**<br>"device that provides coded information, including said item associated item codes, to the remote ordering terminal" |
| **Court**<br>"device that provides coded information, including said item associated item codes, to the remote ordering terminal" |

> **"user inputting said identifying code"**

| |
|---|
| **Plaintiff**<br>"providing an item code to the remote ordering terminal either by: (1) initial presentation by the user; or (2) selection by the user of a product or service from a list of purchasable products or services displayed by the remote ordering terminal" |

---

[7]Because the distinction between item codes and user-discernable information is evident from a plain reading of the claim language, Plaintiff is incorrect that it would be necessary for the Court to find a disclaimer or disavowal in order to reach the conclusions the Court has reached. (*See* D.I. 232 at 4) Further, although unnecessary to consult extrinsic evidence to resolve this dispute, Defendants' expert, Dr. Michael Shamos, supports the Court's conclusion by opining as to the ordinary meaning of "item code" to one of skill in the art in the context of the '110 patent. (*See* D.I. 231-1 Ex. D at ¶¶ 57-68)

| Defendants |
|---|
| "user inputting the identifying code such that said user device receives the identifying code from the user" |

| Court |
|---|
| "user inputting the identifying code such that said user device receives the identifying code from the user" |

Plaintiff argues that users need not initially present the system with an item code, arguing

that while item codes may be presented by a user to the system they alternatively may be

presented to a user for selection. (D.I. 232 at 5) In support of this argument, Plaintiff again cites

a portion of the specification that discusses the embodiment depicted in Figure 4. (*Id.*) (citing

'110 patent at 10:7-17) For the reasons already discussed, the Court rejects Plaintiff's argument

that Figure 4 and associated portions of the specification relate to input of item codes by the user.

The claim language, read in the context of the specification, makes clear that item codes are

initially provided by a user to the system, as already discussed above. This requirement is

captured in Defendants' proposed construction, which the Court will adopt.[8]

**B.      Defendants' Motion for Summary Judgment of Non-Infringement**

Plaintiff argues that hyperlinks implemented in Defendants' websites are item codes that

infringe the Asserted Claims. (*See* D.I. 232 at 1) (arguing that users of Defendants' accused

---

[8]Plaintiff asserts that Defendants essentially "seek reconsideration of this Court's construction of 'data entry device' nearly a year after entry of the [Claim Construction] Order. This legal maneuver is procedurally improper and substantively incorrect." (D.I. 232 at 5-6) The Court disagrees, as it expressly invited the parties to consider "propos[ing] constructions" for terms, including "data entry device for providing said terminal with said . . . item codes." (D.I. 229 at 2-3; *see also generally Pfizer, Inc. v. Teva Pharm., USA, Inc.*, 429 F.3d 1364, 1377 (Fed. Cir. 2005) ("[D]istrict courts may engage in a rolling claim construction, in which the court revisits and alters its interpretation of the claim terms as its understanding of the technology evolves."))

websites "input item codes by clicking hyperlinks that include the item codes associated with the

product offerings.") Defendants argue that Plaintiff has failed to point to any *user input* that

*initially* provides the item codes to the system. (*See* D.I. 212 at 7) Defendants also contend,

without dispute from Plaintiff, that everything identified by Plaintiff's expert as an item code is

discernable to a user. (D.I. 230 at 5; *see also* Tr. at 32-33 (Plaintiff's counsel stating:

"[E]verything Dr. Rhyne [Plaintiff's expert] has pointed to is discernable to the user. These

search parameters and the hyperlinks are all discernable to the user."))

The Court agrees with Defendants. Plaintiff has failed to present evidence from which a

reasonable jury could find infringement. Given the Court's constructions above, Plaintiff's

evidence that user-discernable hyperlinks are presented to a user does nothing to meet the claim

limitations that item codes must be initially provided by a user and are distinct from user-

discernable representations of products. Plaintiff has presented no theory of infringement on

which it could prevail under Defendants' constructions, which the Court has now (largely)

adopted.

Plaintiff appears to concede that its infringement case depends on the Court adopting

Plaintiff's constructions for the terms construed above, which the Court has not done. In the

supplemental post-hearing briefing ordered by the Court, Plaintiff requests an opportunity to

present additional evidence, should the Court adopt Defendants' constructions, or to assert

infringement under the doctrine of equivalents. (*See generally* D.I. 233 at 5) Plaintiff's request

comes very late. Plaintiff has made no effort to show good cause under Rule 16(b)(4) to modify

the case schedule, which included dates for completion of expert discovery and for infringement

contentions. Nor has Plaintiff given any explanation for how the additional expert testimony it

belatedly seeks to provide could change the Court's decision on non-infringement, even though the Court ordered the parties to discuss how the Court's claim construction inclinations (which the parties have had since May 24) with respect to the "item code" terms – specifically, that item codes are distinguishable from user-discernable information – "should be taken into account with respect to Defendants' non-infringement arguments." (D.I. 229 at 2)

Nevertheless, the Court recognizes that its actual constructions are only being provided to the parties today. It is possible (although unlikely) that Plaintiff could persuade the Court that even at this late date – with the pretrial conference just a week away and trial set to begin in a month – that it should be permitted to present new evidence or theories with respect to infringement. The Court will give the parties a brief opportunity to meet and confer and advise the Court as to whether summary judgment of non-infringement should be entered on the current record or whether Plaintiff should be permitted to further develop the record.

On the record as it stands at present, Defendants have met their burden at summary judgment of showing no genuine issue of material fact that their websites do not infringe the Asserted Claims of the '110 patent. If the record stays as it is, Defendants will be entitled to judgment as a matter of law.

## IV. CONCLUSION

For the reasons above, the Court will construe the claim terms as indicated above and will order the parties to provide the Court their positions on whether summary judgment of non-infringement should be entered. An appropriate order follows.